## McManus, Appellant, v. Philadelphia.

*Municipalities—Municipal contracts—Change in contract—Parol agreement—Act of June 1, 1885, P. L. 37.*

Where a contractor enters into an agreement in writing with the city of Philadelphia to do certain work of reconstruction on a reservoir, and the contract provides that he is to receive certain amounts per cubic yard for filling, excavations and masonry, but stipulates that the amount to be expended shall in no event exceed a sum stated, and that any changes in the work shall be in writing, and during the progress of the work a change is made in the method of doing it by the oral direction of the assistant city engineer, involving a large additional expense to the contractor, and thereafter a supplemental agreement in writing is made between the contractor and the city, by which a larger maximum price is fixed for the whole work than that specified in the original agreement, the contractor cannot recover for extra work done under the direction of the assistant city engineer in excess of the maximum price mentioned in the second written agreement.

The mere oral directions of city engineers are not sufficient to amend or add to a written contract or nullify the Act of June 1, 1885, P. L. 37, requiring all contracts relating to city affairs to be in writing.

*Arbitration—Municipal contract—Decision of city engineer.*

Where a municipal contract provides, "that all disputes between the city and the contractor shall be referred to the engineer and his decision shall be final and conclusive," the contractor is bound by the decision of the engineer, although it appears that the engineer was neglectful and ignorant of the facts on which he based his decision, if no fraud on the engineer's part is shown.

Argued Jan. 22, 1902. Appeal, No. 329, Jan. T., 1902, by plaintiff, from order of C. P. No. 1, Phila. Co., Dec. T., 1898, No. 548, sustaining exceptions to referee's report in case of Michael McManus v. City of Philadelphia. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to report of George W. Harkins, Esq., referee. The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in sustaining exceptions to referee's report.

*F. B. Bracken*, with him *John J. Clarke*, for appellant.

*Chester N. Farr, Jr.*, assistant city solicitor, and *John L. Kinsey*, city solicitor, for appellee, were not heard.

OPINION BY MR. JUSTICE DEAN, February 24, 1902:

On August 18, 1896, plaintiff by writing contracted with defendant to do certain work in and about " Queen Lane Reservoir," made necessary because of original defects in the construction. By the contract he undertook to build a retaining wall around the reservoir slopes, reconstruct the outer slopes of the banks so as to change a too abrupt grade into one of two to one, and then sod the slopes. A schedule of prices was fixed ; he was to receive fifty-seven cents per cubic yard for filling, twenty-two cents for excavation, $4.97 for masonry, and thirteen cents per square yard for sodding. During the progress of the work, it was found, that the material in the old slopes was so defective that, instead of cutting into them, commencing part of the way down from the top, as had been contemplated, it was necessary to commence at the top and do the work from there to the bottom. This change was made under the oral direction of the assistant city engineer; there were other changes from the specifications, but, this was the principal one, and involved the largest additional expense to the contractor. The sodding was done after the date at which the contract was to be completed, and after the appropriation therefor was exhausted, but at the time the contract was made there were sufficient funds in the hands of the department appropriated for that purpose, but when the sodding was completed the money appropriated had already been used for other purposes. The city refused to pay for any extra work on the grounds : (1) that no such work had been authorized by the city ; (2) that it had not been authorized in writing as required by law ; (3) under an arbitration clause in the contract the de-

cision of an arbitrator, the city engineer, was to be final and conclusive, and he has decided the contractor is not entitled to any payment beyond the written contract price; (4) and further, the city cannot lawfully pay for the sodding because there is no money remaining of the amount appropriated for that purpose. Thereupon, the contractor brought this suit, to recover the contract price of 44,214 square yards for sodding at thirteen cents per yard, amounting to $5,747.82, and for extra excavation and filling, $12,430.41, both amounting to $18,178.23. The issue was referred under the act of May 14, 1874, to George W. Harkins, Esq., to hear the parties, find the facts, draw conclusions of law and report to the court. On both facts and law he found for plaintiff and awarded to him his entire claim. The city filed exceptions to the report, which were sustained, and we have this appeal by plaintiff, who, in substance, assigns for errors the action of the court in sustaining the exceptions, and relies on the award of the referee as correct both in its facts and law.

The case, in most of its features, is not different from that between the same parties, No. 187, January term, 1902, in which opinion has been handed down this day. There is one particular, however, in which they differ; this is not a contract to do certain work for a lump sum as in the contract referred to, but to do certain work according to specifications at a fixed price per cubic and square yard. But this clause appears in the first written contract in this case: " It is further distinctly agreed and understood that the total amount to be expended for the work done under this contract shall in no event exceed the sum of $58,200." The contract, as already noticed, is dated August 18, 1896. But the city, on discovering that to properly repair the reservoir, so that it would answer the purpose intended, would require a much larger sum than originally estimated, on February 23, 1897, made with plaintiff a supplemental agreement in writing, that the maximum price should in no event exceed $71,200—instead of $58,200—and that in all other respects the original agreement should remain unchanged. We have here, then, a claim for work extra to the original contract; that contract expressly says in clause 54, as follows: " No allowance shall be made to the contractor for any work as extra work, unless the contractor

is directed in writing by the engineer to do such extra work at a price satisfactory to the director." Then again in clause 5 appears this stipulation :

"No deviation from the drawings or specifications will be permitted, unless by special direction previously given in writing by the engineer." It was further agreed, in the written contract, that it was subject to the act of June 1, 1885, which declares, that "all contracts relating to the city affairs shall be in writing signed and executed in the name of the city."

We then have the law of the commonwealth and the law of the contract, both in opposition to the plaintiff's claim for extra work. For that it was work extra in the minds of both parties at the time the contract was first made is practically conceded by both ; indeed the learned referee in substance so rules. In that contract the total expenditure was limited to $58,200. But then during the progress of the work and within six months afterwards, both realized that this was not enough money to properly do the work ; what course did they adopt? The contractor, it may be assumed, would not risk the expenditure of $13,000 more, on the mere oral direction of the engineer to go ahead, but demanded a written contract such as the original contract and the law required ; then, was made in writing, in the name of the city, the supplemental contract of February 23, 1897, increasing the maximum amount to be expended to $71,200. There is no written allowance for extra work beyond this sum. The learned referee has found as a fact, that the assistant city engineers orally directed the contractor to do work beyond the value of this maximum and to the amount of his charges, and the evidence seems to justify his finding ; but the mere oral directions of assistant city engineers are not sufficient to amend or add to a written contract or to nullify the law. We concede, that if this maximum expenditure had not been inserted in the written contract, there being no bid at a lump sum, but only at a stipulated price per yard, the work to be done under the supervision and direction of the city engineer, then his oral instructions to extend the work and enlarge the quantity of excavation and fill are within the terms of the writing. But any attempted change of the written price per yard would not have been within its terms. Any attempt to step over the limit of the aggregate written cost of the work,

on the ground of oral instructions from the city engineer, cannot avail the contractor.

We do not deem it necessary to again cite at length the decisions in Malone v. Phila., 147 Pa. 416, Hepburn v. Phila., 149 Pa. 335, and Filbert and Porter v. Phila., 181 Pa. 530, and the last case heretofore noticed between these same parties. The interpretation of article 14, act of June 1, 1885, is in these cases announced clearly and with sufficient elaboration. We intend to adhere rigidly to the rulings in those cases. Without such interpretation the act of 1885 in that section is useless; that a contract solemnly entered into between a municipal corporation in writing can be altered, added to or amended by the mere say so, of a subordinate officer and his subordinates, leaves the corporation subject to the very abuses which flow from the unchecked fraud, falsehood and dishonesty the statute seeks to guard against. And there is no hardship to the contractor in enforcing this rule. He can protect himself by proper stipulations in his first written contract from unforeseen increased expenditures. If he do not do this then, he must and ought to take the risk. He is not bound to accept a contract from a city any more than he is forced to make one with an individual.

The referee, under the clause, " All disputes between the city and the contractor . . . . shall be referred to the engineer and his decisions shall be final and conclusive," finds that this extra work claimed for, and denied by the city, was not a dispute within a proper interpretation of the contract. But his reasons for so finding only affect the credibility of Trautwine, the chief engineer and his assistants; in other words, he finds that Trautwine was neglectful and ignorant of the facts on which he based his decision. This may be so, but as long as no fraud was shown, the contractor is bound by the decision of the arbitrator he joined in selecting.

The court below based its decree overruling the referee and sustaining the exceptions, on the fact that the decision of the arbitrator was final and conclusive. We put our affirmance of the judgment as to extra work on both grounds.

Nothing is said about the claim of $5,747.82, for sodding, in the opinion of the court below; it is not touched upon. If our ruling would affect the judgment, we would pass on this question and affirm the referee's conclusion. But as we have de-

cided, that in no event can payments to the plaintiff exceed the sum of $71,200, the maximum of the supplementary agreement, such ruling would not help appellant.    He admits that he has already received $69,682, add to this the judgment which the city agreed in the court below might be entered for him, the aggregate is slightly in excess of this maximum amount.    Therefore we simply affirm the judgment.